UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Laurie Kiely,                                           Civil No.17-3438 (FLN)

    Plaintiff,

v.                                                      **ORDER**

Nancy Berryhill,
Acting Commissioner of Social Security,

    Defendant.
_____

Karl E. Osterhout and Edward C. Olson, for Plaintiff.
Pamela A. Marentette, for Defendant.
_____

Plaintiff Laurie Ann Kiely seeks judicial review of the final decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA"), who denied her application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. This Court has jurisdiction over the claim pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), 28 § U.S.C. 636(c), and Rule 73 of the Federal Rules of Civil Procedure. The parties have filed cross motions for summary judgment. *See* ECF Nos. 12 and 19. For the reasons set forth below, the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE.**

## I. INTRODUCTION

On June 18, 2014, Kiely applied for and completed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act, and on September 4, 2014, Kiely applied for supplemental security income ("SSI") under Title XVI of the Social Security Act. Administrative Record [hereinafter "AR"] 201, 205, ECF No. 11. Kiely alleges that her disability

1

began on July 31, 2013. AR 201. Kiely's DIB and SSI applications were denied initially on October 13, 2014, and upon reconsideration on February 17, 2015. AR 141, 150. On May 25, 2016, an administrative hearing was held before Administrative Law Judge ("ALJ") Roger Thomas. AR 36–70. On June 27, 2016, the ALJ found Kiely was not disabled and denied Kiely's DIB and SSI applications. AR 29. On June 16, 2017, the SSA Appeals Council denied Kiely's request for review, rendering the ALJ's decision final for purposes of judicial review. AR 1–6; *see* 20 C.F.R. § 404.981.6. On July 28, 2017, Kiely commenced this civil action seeking reversal of the Commissioner's decision, or in the alternative, remand for further proceedings. ECF No. 12.

## II. FACTUAL FINDINGS

### A. Background

Kiely was fifty-four years old on her alleged disability onset date. AR 28. Kiely initially claimed that the following severe impairments limit her ability to secure and maintain competitive employment: major depression, anxiety, migraines, and sleep apnea. AR 241–42. Kiely later claimed she suffered from additional severe impairments: osteoarthritis in her right hand and gastroesophageal reflux disease ("GERD"). AR 292. Kiely's relevant past work includes employment as a kitchen worker, maintenance worker, sandwich maker and fast food worker, school bus driver, and housekeeping cleaner. AR 255, 346.

### B. Administrative Hearing

Kiely testified at the May 25, 2016, administrative hearing. AR 41–58. Kiely was represented by a non-attorney representative. AR 39. Her representative made no objection to the admission of exhibits into the record and was not aware of any other documents that needed to be added to her file. *Id.* Her representative alleged that she suffered from the following severe impairments: depressive disorder, generalized anxiety disorder, personality disorder, infrequent

migraines, sleep apnea, osteoarthritis of her right hand, obesity, and right foot pain in connection with her bunionectomy. AR 40–41. Kiely testified that her sleep-aid prescription made her groggy in the morning. AR 46. She testified that she took medication for depression, and that her doctor had successfully adjusted her dosage to improve her concentration and focus. AR 51. Kiely testified that she likes to work and keep busy, but that it is challenging to find work at her age, and her depression and anxiety make work challenging at times. AR 57.

Dr. Karen Butler testified as a neutral medical expert. AR 58–62. Butler stated that although Kiely's global assessment of functioning ("GAF") score was low, her impairments did not meet or medically equal any of the relevant listings. AR 61. Butler noted that she would impose certain limitations on Kiely's work environment. AR 62. Butler opined that Kiely could complete unskilled to semiskilled work involving brief and superficial contact with others, but in which serving the public should not be part of her job. *Id.*

### C. Medical Evidence

#### 1. Physical Impairments

On April 15, 2013, Kiely visited her primary care physician, Scott Waters, D.O., and was treated for hypertension, hyperlipidemia, headaches, and post-menopausal bleeding. AR 350. Waters noted that Kiely's gait appeared normal and her judgment appeared intact. *Id.* Waters referred Kiely for subsequent lab tests and blood work. *Id.*

On November 27, 2013, Kiely again presented to Waters. AR 353. During the visit, Waters noted Kiely's current medications and opined that her body mass index was high, and that her judgment appeared to be intact. *Id.* Waters referred Kiely to a sleep specialist to treat her sleep apnea. AR 354.

On March 26, 2014, Joan Fox, M.D., performed nocturnal polysomnography and diagnosed Kiely with obstructive sleep apnea. AR 491. Fox prescribed Kiely a CPAP machine and instructed her on how to use the device. *Id.* On April 23, 2014, Kiely was diagnosed with "severe obstructive sleep apnea" after a second nocturnal polysomnography was performed. AR 465–66. After using her CPAP for several months, Kiely stated that she was rested and feeling much better. AR 630.

On October 7, 2014, Charles Grant, M.D., performed a SSA consultative examination. AR 100. Grant noted that Kiely suffered from obstructive sleep apnea, depressive disorder, personality disorder, and anxiety. AR 90. Grant opined that Kiely could not preform her past relevant work, but could perform other medium exertion level jobs in the national economy. AR 99.

On August 4, 2014, Kiely was treated by Timothy Felton, M.D. AR 622. Kiely told Felton that a bunion on her right foot was hurting and getting worse. *Id.* On October 17, 2014, Felton performed a bunionectomy of Kiely's right foot. AR 626. Felton's post-operative notes indicate that Kiely was "doing well" after surgery. AR 627. On November 12, 2014, Felton informed Kiely that she could bear weight in tennis shoes, but should not run, jump, or lift heavy objects. AR 628.

On January 19, 2015, Kiely was treated for osteoarthritis of the right hand at Allina Health Clinic. AR 110. On January 24, 2015, Kiely completed an adult function report and noted that she suffered from major depression, sleep apnea, anxiety, insomnia, migraines, GERD, and osteoarthritis of the right hand, which was being treated with a splint. AR 292. On February 3, 2015, Francis Yamamoto, M.D., performed an SSA consultative examination. AR 110. Yamamoto noted that Kiely suffered from major depressive disorder, generalized anxiety, personality disorder, migraines, osteoarthritis of the right hand, and sleep apnea with clear lungs. *Id.*

Yamamoto opined that Kiely was not disabled, and although she could not perform her past work, she could perform other semi-skilled work in the national economy. AR 118.

On March 27, 2015, Kiely stated on a SSA hearing disability report that she suffered migraine headaches when she was stressed. AR 306. She also stated that she tried to work at a fast food provider, but pain in her right hand and lower back prevented her from doing so. *Id.* Kiely also listed treatment sources for hand pain and bunionectomy. AR 307.

### 2. Mental Impairments

In early 2014, Kiely received approximately two weeks of treatment at the Central Minnesota Mental Health Center ("CMMHC") for her underlying major depression and anxiety. AR 380–98. During that period at CMMHC, Kiely participated in structured recovery activities, group support programming, psycho-education, and calming skills. AR 398. The goal of her treatment at CMMHC was to improve her symptoms and, by her discharge date, to reduce her symptoms to a manageable level. AR 407. After her discharge from CMMHC, on February 14, 2014, Kiely informed CMMHC staff that "things are going okay . . . [and she] was [living] with her sister." AR 397. Kiely also reported that she was excited that she would be able to spend time with her son. *Id.*

On April 1, 2014, Kiely's treating psychiatrist, Dr. Patricia Steffen, opined that Kiely's mental health disorders included major depressive disorder recurrent moderate, anxiety disorder not otherwise specified, and personality disorder not otherwise specified. *Id.* Steffen noted that Kiely had a long history of employment obstacles relating to her mental health disorders. *Id.* Steffen also noted that Kiely's disorders interfered with her ability to care for, and support, her and her son. *Id.*

5

From July 2014 to March 2016, Kiely was periodically treated for major depressive disorder and generalized anxiety at Nystrom & Associates, Ltd. ("Nystrom"). AR 544–71, 602–17, 674–799. Ms. Van Tassel, M.A., L.P.C., Kiely's clinical counselor at Nystrom, completed a SSA Medical Source Statement on November 11, 2014, and indicated that Kiely's impairments lasted or were expected to last over 12 months. AR 583. She indicated that Kiely would have moderate or marked limitations in almost all of the areas listed, and that she would require additional, unscheduled breaks during an eight-hour workday. AR 584. On November 3, 2014, Van Tassel opined that Kiely could not sustain competitive employment because of her depression and anxiety symptoms. AR 587.

On May 5, 2015, Kiely again presented to Steffen. AR 648. During the visit, Kiely stated that she was working part time as a maintenance worker. *Id.* Kiely also represented that she suffered from poor concentration and was frequently depressed. *Id.*

**D. Commissioner's Decision**

On June 27, 2016, the ALJ issued a decision denying Kiely's application for DIB and SSI benefits. AR 19–29. In his determination that Kiely was not disabled, the ALJ followed the five-step sequential process established by the SSA, outlined in 20 §§ C.F.R. 404.1520(a) and 416.920(a).

The first step in the sequential process is to consider whether the claimant's work during the alleged disability period qualifies as substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant has performed substantial gainful activity, she is not disabled. *Id.* At step one, the ALJ found that although Kiely had worked during the alleged period of disability, she had not engaged in substantial gainful activity because her compensation fell below substantial gainful activity levels. AR 21.

At the second step, the ALJ must determine whether the claimant has an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416. 920(a)(4)(ii). At step two, the ALJ found that Kiely had the following severe impairments: depression, anxiety, personality disorder, obesity, and status post bunionectomy surgery. AR 21–22. He further found that Kiely had the following non-severe impairments: hypertension, asthma, hyperlipidemia, headaches, insomnia, and obstructive sleep apnea. AR 22.

The third step is to determine whether the claimant has an impairment that meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; 416.920(d), 416.925, 416.926. At step three, the ALJ determined that Kiely did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1. AR 22–23. At step three, the ALJ specifically concluded that Kiely's bunion surgery did not meet or medically equal listing 1.02A, and her mental impairments did not meet or equal listings 12.04 and 12.06. AR 23.

If the claimant's impairment does not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of the claimant's Residual Functional Capacity ("RFC"). Here, the ALJ concluded that Kiely had an RFC "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except performing unskilled to semiskilled work, with brief, infrequent and superficial contact with others, likely an '8' in the fifth digit of the Dictionary of Occupational Titles [("DOT)"] and where serving the public is not a primary job duty." AR 23–24. In making this determination, the ALJ found that "[Kiely's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 27.

The fourth and fifth steps of the sequential process determine whether the claimant has the RFC to perform either her past relevant work or any other job that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g). If the claimant can still perform past relevant work, then she is not disabled. *Id.* If the claimant cannot perform her past relevant work, then the "burden shifts to the Commissioner to prove, first, that the claimant retains the [RFC] to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

At step four, the ALJ found that Kiely's RFC would permit her to perform her past relevant work as housekeeping cleaner. AR 27. The ALJ concluded that the housekeeping cleaner position did not require that Kiely perform "work-related activities precluded" by her RFC. *Id.* In making this determination, the ALJ relied on the VE's testimony "that she could perform this work within the parameters of the [RFC]." AR 28.

Although the ALJ found that Kiely was not disabled at step-four given that she could perform her past relevant work, the ALJ, alternatively, concluded at step-five that there are other jobs that exist in significant numbers in the national economy that Kiely could also perform. *Id.* The VE testified that Kiely "would be able to perform the requirements of representative occupations such as cleaner, DOT#318.687-018, medium, unskilled work, 10,000 jobs in Minnesota and 400,000 nationally and hand packaging, DOT#920.587-018, medium, unskilled work, 3,000 jobs in Minnesota and 120,000 nationally." AR 29. The ALJ concluded that Kiely was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy and that Kiely was therefore not suffering from a disability as defined under

the Social Security Act. AR 29. In making this determination, the ALJ considered the VE's testimony, and Kiely's' RFC, age, education, and work experience and found this evidence consistent with the DOT. *Id.*

### III. STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "Disability" under the SSA means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled under the SSA "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §423(d)(2)(A).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also*

*Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* Therefore, this Court's review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## IV. ANALYSIS

Globally, Kiely argues that the ALJ's evaluation of her physical impairments was legally insufficient because the ALJ improperly and independently interpreted the medical evidence of record, and that the ALJ focused entirely on her mental health impairments without consideration of her physical impairments. *See* ECF No. 13 at 3. More specifically, Kiely argues that: (1) the ALJ failed to develop the record sufficiently with respect to her physical impairments, relying instead on his lay interpretation; (2) erred in not finding that she is disabled as a matter of law; (3) failed to make any severity finding regarding her osteoarthritis; (4) erred in concluding that her

migraines, insomnia, and obstructive sleep apnea were non-severe; and (5) failed to provide a legally sufficient basis for his RFC finding. *See generally id.* The Commissioner argues that the ALJ properly concluded that Kiely was not disabled, adequately developed the record, relied on substantial evidence in the record in determining Kiely's RFC, and properly weighed evidence and made appropriate severity findings. *See generally* ECF No. 20. After a review of the entire record, this Court concludes that the ALJ's findings were supported by substantial evidence in the record as a whole, and affirms the ALJ's denial of Kiely's DIB and SSI applications.

### A. The ALJ sufficiently developed the record

Kiely argues that the ALJ failed to develop the record as to material issues, namely her physical impairments, and failed to make a proper inquiry into her documented physical disorders. *See* ECF No. 13. at 7. Because of this failure, Kiely claims that the ALJ impermissibly relied upon his lay analysis of the raw medical data in determining Kiely's RFC. *See id.* at 6–10. Further, Kiely asserts that because "the ALJ did not fulfill his duty to develop the record with respect to her physical functionality, it is unclear whether she is in fact capable of the rigorous demands of medium work . . . ." *Id.* at 4. This Court disagrees.

An ALJ has an obligation to fully develop the record, and failure to do so constitutes reversible error when the claimant shows that the ALJ would have decided the case differently if not for the error. *See, e.g.*, *Snead v. Barnhart*, 360 F.3d 834, 839 (8th Cir. 2004) (reasoning that the ALJ had an obligation to further develop the medical record because the disputed evidence may have undermined the Commissioner's burden "at step five of the analysis."). In addition, an ALJ should further develop the record when a critical issue that could alter the outcome of the disability determination is undeveloped. *See Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010). "The ALJ is required to order medical examinations and tests only if the medical records presented

migraines, insomnia, and obstructive sleep apnea were non-severe; and (5) failed to provide a legally sufficient basis for his RFC finding. *See generally id.* The Commissioner argues that the ALJ properly concluded that Kiely was not disabled, adequately developed the record, relied on substantial evidence in the record in determining Kiely's RFC, and properly weighed evidence and made appropriate severity findings. *See generally* ECF No. 20. After a review of the entire record, this Court concludes that the ALJ's findings were supported by substantial evidence in the record as a whole, and affirms the ALJ's denial of Kiely's DIB and SSI applications.

### A. The ALJ sufficiently developed the record

Kiely argues that the ALJ failed to develop the record as to material issues, namely her physical impairments, and failed to make a proper inquiry into her documented physical disorders. *See* ECF No. 13. at 7. Because of this failure, Kiely claims that the ALJ impermissibly relied upon his lay analysis of the raw medical data in determining Kiely's RFC. *See id.* at 6–10. Further, Kiely asserts that because "the ALJ did not fulfill his duty to develop the record with respect to her physical functionality, it is unclear whether she is in fact capable of the rigorous demands of medium work . . . ." *Id.* at 4. This Court disagrees.

An ALJ has an obligation to fully develop the record, and failure to do so constitutes reversible error when the claimant shows that the ALJ would have decided the case differently if not for the error. *See, e.g.*, *Snead v. Barnhart*, 360 F.3d 834, 839 (8th Cir. 2004) (reasoning that the ALJ had an obligation to further develop the medical record because the disputed evidence may have undermined the Commissioner's burden "at step five of the analysis."). In addition, an ALJ should further develop the record when a critical issue that could alter the outcome of the disability determination is undeveloped. *See Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010). "The ALJ is required to order medical examinations and tests only if the medical records presented

to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994). However, an ALJ is only required to obtain further medical evidence if the presented record is insufficient to determine disability. *See Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011).

Kiely acknowledges that she "did not provide any treating source medical opinions pertaining to her physical conditions" but argues that "there are certainly medical records concerning [her physical] conditions, as well as [evidence of] chondromalacia of the patella, carpal tunnel syndrome, and insomnia, in the record[.]" ECF No. 13 at 7. Kiely further argues that "an ALJ is absolutely obligated to be *curious* about the nature and extent of a claimant's impairments and limitations." *Id.* Aside from offering no support for an ALJ's curiosity requirements, Kiely overlooks the ALJ's consideration of her physical impairments of hypertension, asthma, hyperlipidemia, headaches, insomnia, and obstructive sleep apnea. Although the ALJ found those disorders non-severe, he offered a sufficient explanation for his findings. For example, the ALJ opined that Kiely's use of a CPAP device managed her sleep apnea symptoms, an inhaler controlled her asthma, Imitrex controlled her headaches, and found treatment for those impairments was otherwise conservative. AR 22; *see, e.g.*, *Martise*, 641 F.3d at 923 (finding that a claimant's condition of migraine headaches did not constitute a severe impairment where the record was void of any diagnostic testing and where the claimant worked for several years with the headache and there was no evidence that it had worsened).

In addition, Kiely fails to identify what additional medical evidence is needed in order to properly weigh her claim and develop and adequate record. An "ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994). That the ALJ reached an adverse determination does

not a support a finding that the ALJ failed to investigate and consider Kiely's relevant disorders. In addition, without identifying what weight should be given to the identified and unidentified medical evidence, Kiely fails to show that the ALJ would have decided the case differently if the record was further developed. *See Snead*, 360 F.3d at 839.

Kiely also argues that the ALJ's failure to develop the record leaves an evidentiary gap with the ALJ impermissibly relying on his own lay opinion in fashioning Kiely's RFC. An ALJ "bears the primary responsibility for assessing a claimant's [RFC] based on all the relevant evidence[,] . . . [but] a claimant's [RFC] is a medical question" that requires "[s]ome medical evidence" in support. *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). Here, the record shows that the ALJ's RFC determination included, at minimum, some medical evidence. Although an ALJ must not "succumb to the temptation to play doctor and make their own medical findings," *Pate–Fires v. Asutre*, 564 F.3d 935, 947 (8th Cir. 2009), in this case, Kiely does not argue that the ALJ went beyond the presented evidence to make independent factual findings. Indeed, Kiely's argument is that the ALJ failed to investigate the evidence. To the extent that Kiely believes that the evidence was not properly weighed, this Court's review of the ALJ's factual determinations is deferential, and it neither re-weighs the evidence, reviews the factual record *de novo*, *see Flynn*, 107 F.3d at 617, nor reverses when an ALJ's decision falls within a reasonable "zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Here, the ALJ properly relied upon substantial evidence in the record as a whole in his determination of Kiely's RFC, and therefore, her disability status.

Finally, Kiely argues that the ALJ failed to develop the record sufficiently to determine how her obesity and status post bunionectomy—both of which were determined to be severe impairments—would affect her overall functionality. Specifically, she argues that Grant and

Yamamoto offered their SSA consultative opinions regarding her functionality before she reported that she had undergone bunion surgery, and that the ALJ should have further developed the record on those disorders. ECF No. 13 at 21.

That Grant and Yamamoto offered their SSA consultative opinions before Kiely underwent her right foot bunionectomy is not controlling. Other previous evidence of record, namely Felton's treatment notes, AR 626–628, showed that she successfully recovered from her right foot bunionectomy, and the procedure and her obesity did not produce any residual limitations exceeding the ALJ's RFC finding. Again, the ALJ's RFC finding here is supported by "[s]ome medical evidence . . . ." *Lauer*, 245 F.3d at 703. Accordingly, the record considered by the ALJ sufficiently established the work-related limitations attendant to Kiely's obesity and status post bunionectomy.

### B. Kiely has failed to show harm

Kiely also asserts that she was harmed by the ALJ's incorrect RFC determination that she could perform medium exertional work. According to Kiely, had the ALJ properly investigated and weighed Kiely's disorders, the ALJ would have limited her RFC to light work. *See* ECF No. 13 at 5. Kiely argues that limiting her to light work is significant given that "all of the jobs relied upon by the ALJ to reach his alternative step 5 conclusion . . . are medium exertion jobs." *Id.*

As to harm, the salient inquiry is whether Kiely was prejudiced or treated unfairly by the manner in which the ALJ developed the record. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). Absent unfairness or prejudice, remand is not warranted. *See id*. Kiely carries the burden to show that an alleged error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (internal citations omitted).

Assuming, without deciding, that the ALJ erred in his determination that Kiely's RFC should be limited to light work, Kiely, nonetheless, fails to show harm in that determination. Specifically, Kiely's harm challenge here relies on the possibility that unidentified evidence would have been available, and considered, had the ALJ further developed the record. However, without a specific showing, an argument that the outcome may have been different based on unknown evidence is too attenuated to support a remand. *See Driggins v. Harris*, 657 F.2d 187, 188–89 (8th Cir. 1981) (finding that remand is necessary when the ALJ's determination was based solely on an underdeveloped issue). Crucially, "the substance of [Kiely's] alleged other medical visits [and evidence are] unclear at best, and [she] has not indicated that the [evidence] should be regarded as dispositive for purposes of h[er] claim. [Kiely] was treated fairly, and [s]he has failed to show that [s]he was prejudiced." *Shannon v. Charter*, 54 F.3d 484, 488 (8th Cir. 1995).

### C. The ALJ Properly Weighed Kiely's Disorders

Kiely argues that the ALJ failed to asses her diagnosis of osteoarthritis as either severe or non-severe. *See generally* ECF No. 13. As discussed *supra*, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that limits her ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Kiely claims that Yamamoto's SSA consultative report was issued before she had reported her osteoarthritis or back pain on March 27, 2015, and as a result, Yamamoto failed to consider this evidence as it was not yet available. *See* ECF No. 13 at 7. However, the Commissioner correctly points out that Kiely's timeline is incorrect. Yamamoto's report was dated February 3, 2015, well after Kiely first reported back pain symptoms on January 24, 2015, not March 27, 2015. *See* ECF No. 20 at 15. Indeed, Yamamoto states in his report that he considered two pieces of medical evidence that reference Kiely's osteoarthritis; her January 19, 2015, treatment at Allina

15

Health Clinic, and her January 24, 2015, questionnaire in which she stated that she wore a hand splint for arthritis in the her right hand. AR 110. Therefore, the ALJ properly relied on Yamamoto's SSA consultative report regarding her osteoarthritis.

As for Kiely's reference to back pain, she did not contend that she had a back impairment or limitation at the hearing before the ALJ. Although Kiely argues that the ALJ was required to develop the record as to her back impairment, patella chondromalacia, and carpal tunnel syndrome, Kiely's representative failed to inform the ALJ there was a need to consider these impairments as an independent basis for disability. Also, given that Kiely did not allege limitations due to back pain impairment at her hearing, the ALJ was not required to further develop the record regarding her alleged back pain or make a specific finding with respect to weighing the severity of her back pain. AR 40–41; *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 933–34 (8th Cir. 2010) (reasoning that an ALJ "not obliged to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.") (internal citations omitted).

Finally, it is important to note that the ALJ's alleged error in not finding Kiely's osteoarthritis and back pain as severe impairments is harmless. Had the ALJ denied Kiely's claim for benefits at step two, the ALJ's impairment determination could be reviewed. However, at step two, the ALJ "concluded that [she] could not be denied benefits conclusively . . . and proceeded to the next step of the evaluation sequence[,]" rendering any step two challenge moot. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (2008). Kiely has failed to proffer evidence demonstrating that, but for an error in designating the severity of her osteoarthritis and back pain, the ALJ would have decided that she could not perform medium work, or decided the question of her disability differently. *See, e.g.*, *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (finding that because the ALJ found other impairments severe at step two, any error would be harmless because the ALJ

16

reached the conclusion that that the claimant could not be denied benefits at step two). Absent evidentiary support showing additional functional limitations, the ALJ's determination will be upheld where substantial evidence supports the ALJ's findings at step two. *See Qualls*, 158 F.3d at 427.

Similarly, Kiely argues that the record "plainly establishes that [her] sleep apnea, related insomnia, and migraine headaches cause work related limitations . . . ." ECF No. 13 at 13. Beginning with Kiely's migraines headaches, the ALJ concluded that Kiely's migraines were infrequent based on Kiely's self-assessment and that she was not limited because of them. In addition to infrequency, the record here demonstrates that Kiely worked during the time she sought medical treatment for migraines and that she treated her migraines with self-injected Imitrex. AR 300–01; *see Martise*, 641 F.3d at 924. Accordingly, substantial evidence supported the ALJ's finding that Kiely's migraines were not severe.

As to sleep apnea and related insomnia, the ALJ relied on substantial evidence that those conditions were being successfully treated, and did not interfere or limit her ability to secure and maintain work. AR 22. Specifically, Kiely was tested on March 26, 2014, and diagnosed with obstructive sleep apnea, and thereafter, was prescribed a CPAP machine. AR 491. Similarly, on April 23, 2014, Kiely was diagnosed with "very severe obstructive sleep apnea" after nocturnal polysomnography. AR 465–66. In a follow-up with her primary care physician, Waters, she stated she was rested and felt much better since she started using the CPAP. AR 630. In fact, Kiely told Waters that she slept ten or eleven hours a night and rarely napped, *see id.*, and that she was generally sleeping well. AR 660, 670. This evidence supports the ALJ's determination that these disorders were not limiting. This Court declines Kiely's invitation to reweigh evidence or second guess the ALJ's assessment of these disorders given the substantial evidence supporting his

determination. *See, e.g.*, *Weise v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (reasoning that "it is not" the province of the court to reweigh "evidence presented to the ALJ or to try [an] issue in . . . de novo.") (internal citation omitted).

## V. CONCLUSION

If the ALJ's decision is supported by substantial evidence on the record, this Court cannot reverse simply because "substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468. Here, substantial evidence supports the ALJ's determination that Kiely was not disabled. Accordingly, the Commissioner's decision denying Kiely's application for DIB and SSI must be affirmed.

## VI. ORDER

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Kiely's motion for summary judgment (ECF No. 12) is **DENIED**;

2. The Commissioner's motion for summary judgment (ECF No. 19) is **GRANTED**;

3. The Commissioner's decision is **AFFIRMED** and the case **DISMISSED WITH PREJUDICE**. **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: July 24, 2018                                   *s/Franklin L. Noel*
                                                                   FRANKLIN L. NOEL
                                                                   United States Magistrate Judge